IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MARK PLASCENCIA,<br><br>    Plaintiff,<br><br><br><br><br><br>vs.<br><br><br>CITY OF ST. GEORGE, ST. GEORGE POLICE DEPARTMENT, and JARED TAYLOR,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER GRANTING *DAUBERT* MOTION IN LIMINE AND MOTION TO QUASH SUBPOENAS, AND DENYING MOTION TO STRIKE AND MOTION TO AMEND/CORRECT COMPLAINT<br><br><br><br>Case No. 2:07-CV-2 TS |

This matter is before the Court on a *Daubert* Motion in Limine filed by Defendants on November 6, 2008,[1] a Motion to Strike Affidavit filed by Plaintiff on November 24, 2008,[2] a Motion to Amend/Correct Complaint filed by Plaintiff on December 8, 2008,[3] and a Motion to Quash

---

[1]Docket No. 66.

[2]Docket No. 83.

[3]Docket No. 91.

1

Subpoenas filed by Defendants on January 13, 2009.[4]  For the reasons discussed below, Defendants' Motion in Limine and Motion to Quash will be granted, and Plaintiff's Motion to Strike and Motion to Amend/Correct will be denied.

## I.  FACTUAL BACKGROUND

Defendant Jared Taylor was employed as a police officer for the St. George Police Department (the "Department").  A family living in St. George contacted the Department on April 29, 2006, because they had found an unknown cell phone in their home.  The family feared that they had been burglarized, and that the burglar had left the cell phone in the house.  The Department sent Taylor to investigate.

After Taylor arrived at the home, the unidentified cell phone rang.  The caller was the Plaintiff, who indicated that the phone was his and inquired about its safe return.  Without indicating that he was a police officer, Taylor indicated that Plaintiff could retrieve the phone at a local restaurant the next day.  When Plaintiff arrived at the restaurant and inquired about the phone, Taylor approached and apprehended Plaintiff, handcuffing him behind his back and removing him with some amount of force from the restaurant.  Once outside, Taylor conducted a search of Plaintiff, during which search Plaintiff passed out and was taken to the hospital.  Once Plaintiff complained of the treatment he received, the Department conducted an investigation and determined that Taylor's actions were within the reasonable parameters for an investigative detention and that excessive force had not been used.

Plaintiff alleges that the search conducted by Taylor was abusive and that Taylor used excessive force.  Plaintiff claims that the search was a violation of his Fourth, Fifth, and Fourteenth

---

[4]Docket No. 103.

Amendment rights. Plaintiff also claims that the City of St. George (the "City") and the Department deliberately and willfully ignored Taylor's conduct and that the training regime and policies of the City and Department encouraged Taylor in engaging in dangerous and improper conduct, which led to deprivations of Plaintiff's rights. Plaintiff also alleges that Taylor was negligent in the use of excessive force, and that the City is vicariously liable for the wrongful acts of its employee. Plaintiff also alleges that the City and Department engaged in negligent hiring of Taylor, because they should have done a better job of investigating Taylor prior to hiring him and a better job of supervising him once hired.

## II.  DISCUSSION

A.  *DAUBERT* MOTION

Plaintiff proposes to call Paul Masuyama as an expert witness to testify regarding the actions taken by Taylor and the Department during Taylor's investigation of the alleged robbery and the subsequent investigation of Taylor's actions with respect to Plaintiff. Mr. Masuyama would be testifying as an expert on police practices and procedures. Defendants object to Mr. Masuyama's testimony on a number of grounds, including: (1) that it is inappropriate to designate an expert in the field of police policies and practices; (2) that it is impossible for any individual to have specialized knowledge about such a wide range of subjects within the area of police practices; (3) that Mr. Masuyama, in his expert report, makes statements which "state[] a legal conclusion, usurp[] the function of the jury in deciding the facts, or interfere[] with the function of the judge in instructing the jury on the law;"[5] and (4) that Mr. Masuyama fails to establish a standard of police practices and policies against which the actions of Taylor can be judged.

---

[5]*United States v. Simpson*, 7 F.3d 186, 188 (10th Cir. 1993).

A hearing was held on February 23, 2009, in which Mr. Masuyama gave testimony regarding the proposed testimony contained in his expert report. The Court accepts that Mr. Masuyama has significant experience in law enforcement, working for the Los Angeles Police Department Academy ("LAPD") from 1973 to 1999 in a number of positions, including training patrol officers and detectives. Since his retirement, Mr. Masuyama lists thirteen instances in the past nine years where he has acted as a consultant and/or expert for trials related to police investigations of criminal activity. He also lists numerous trainings attended during and after his time with the LAPD. However, after careful consideration of Mr. Masuyama's expert report and the testimony given by him at the February 23, 2009, hearing, the Court finds, for the reasons explained below, that Mr. Masuyama's testimony is both unreliable and irrelevant, and must therefore be excluded.

    1.    *Standard of Review*

The United States Supreme Court has stated that Fed. R. Evid. 702 requires district courts to act as gatekeepers in order to assure that all expert testimony is both reliable and relevant,[6] and has extended that gatekeeping role beyond scientific evidence to all expert testimony.[7] Expert testimony is to be admitted when the Court has determined that "the expert's proposed testimony is [specialized] knowledge, and . . . the evidence 'fits' the current issue and will assist the jury."[8] The Court must make a determination of reliability by inquiring "whether the reasoning or methodology underlying the testimony is scientifically valid."[9] The Court must also make a

---

[6] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).

[7] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999); *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004).

[8] *Daubert*, 509 U.S. at 592.

[9] *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 (10th Cir. 2005).

determination of relevance by inquiring "whether proposed testimony is sufficiently relevant to the task at hand."[10]

    2.    *Reliability*

The Supreme Court, in *Daubert*, laid out four general criteria for determining the validity of an expert's methodology: (1) whether the theory has been or can be tested or falsified; (2) whether the theory or technique has been subject to peer review and publication; (3) whether there are known or potential rates of error with regard to specific techniques; and (4) whether the theory or approach has general acceptance.[11]

Plaintiff argues that "[a]dmissibility under Fed. R. Evid. 702 hinges on the methodology employed, rather than the conclusions reached."[12] Unfortunately for Plaintiff, it is precisely Mr. Masuyama's methodology, or rather the lack thereof, that is suspect. Mr. Masuyama does not describe his methodology, nor whether it is generally accepted, subject to peer review and publication, or whether it can be tested or falsified. Mr. Masuyama is essentially being offered as an expert by virtue of his training and experience, but the evidence before the Court indicates that the training and experience which might qualify Mr. Masuyama as an expert witness is restricted almost exclusively to police activity in and surrounding Los Angeles, California. Nothing suggests that he is familiar with the conditions of police work in St. George, Utah, nor the training which Taylor would have received as a St. George police officer. In short, Plaintiff has failed to provide the Court with any evidence that Mr. Masuyama's proposed testimony will be reliable.

---

[10]*Id.*

[11]*Daubert*, 509 U.S. at 593-94.

[12]Docket No. 97 at 2. *See Bitler v. A. O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2004).

     3.    *Relevance*

The parties also dispute the relevance of Mr. Masuyama's proffered testimony. The inquiry before the Court is whether a logical relationship exists between the proffered evidence and a material issue in the case.[13] Defendants argue that Mr. Masuyama's proffered testimony is not relevant because instead of assisting the jury to come to a conclusion regarding the facts of the case, it tells them what their conclusions must be.[14] Plaintiff disagrees, arguing that Mr. Masuyama's testimony merely explains common police practices and procedures, so that the jury can determine whether excessive force was used on Plaintiff.

The Tenth Circuit has stated that an expert witness may offer testimony that embraces legal standards, such as the excessive force standard at issue here, but that testimony may be excluded for other reasons, "such as the likelihood of jury confusion, the danger of unfair prejudice, or the inability of such evidence to assist the trier of fact."[15] Expert testimony is unhelpful to the jury if the expert is "merely telling the jury what result to reach,"[16] unless the expert "explain[s] the basis for his opinions in sufficient detail to permit the jury to independently evaluate his conclusions."[17]

---

[13] *Bitler*, 400 F.3d at 1234.

[14] *See Simpson*, 7F.3d at 188 ("The Rules [of Civil Procedure] do not . . . allow an expert to offer testimony that merely tells the jury what result they should reach"); *Hygh v. Jacobs*, 961 F.2d 359, 361-62 (2d Cir. 1992) ("Even if a jury were not misled into adopting outright a legal conclusion proffered by an expert witness, the testimony would remain objectionable by communicating a legal standard–explicit or implicit–to the jury. Whereas an expert may be uniquely qualified by experience to assist the trier of fact, he is not qualified to compete with the judge in the function of instructing the jury . . . .").

[15] *Karns v. Emerson Elec. Co.*, 817 F.2d 1452, 1459 (10th Cir. 1987).

[16] *Id.*

[17] *Id.*

Mr. Masuyama repeatedly offers, in his expert report, opinions that actions taken by Taylor constitute excessive force. Because Mr. Masuyama's conclusions are legal conclusions, he clearly intends to instruct the jury on what result it should reach. This renders Mr. Masuyama's testimony unhelpful to the trier of fact unless he offers sufficient details regarding his methodology that the jury could independently evaluate his claims. As described above, however, Mr. Masuyama has failed to identify how he arrived at his conclusions, making it impossible for the jury to independently evaluate those conclusions.

The Tenth Circuit has also stated that "[t]he inquiry in an excessive force case is an objective one . . . [and] the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[18] The Court finds that Mr. Masuyama's proposed testimony offers a rather large dose of hindsight, and very little that would aid a jury in determining whether Taylor acted as a reasonable officer on the scene would have acted.

    4.    *Conclusion*

Mr. Masuyama's testimony consists of nothing more than his own opinions regarding police practices and procedures. Guided as they may be by his long experience with the LAPD, they are not guided by reliable methodology, which is a requirement under *Daubert*. The lack of methodology renders his testimony both unreliable and irrelevant, and Defendant's Motion in Limine will therefore be granted.

---

[18] *Weigel v. Broad*, 544 F.3d 1143, 1151-52 (10th Cir. 2008) (internal citations omitted).

B.      MOTION TO STRIKE

Defendants submitted an Affidavit in support of their Motion for Partial Summary Judgment.[19] In the Affidavit, the Department's Chief of Police (the "Chief") offered, under oath, statements regarding the hiring, training, supervision and retention of Taylor. In his Motion to Strike, Plaintiff argues that statements within the affidavit should be stricken because they offer only conclusory statements unsupported by facts.

Plaintiff's second cause of action alleges that the City and Department created a regime of hiring, training, and supervising which "encouraged Defendant Taylor to engage in dangerous and improper conduct and to use unreasonable force and thereby endangered the Plaintiff and all other citizens of St. George."[20] Plaintiff's fourth cause of action alleges that the City and Department "negligently and wrongfully failed to properly investigate, hire, supervise, train, test, discipline and monitor Taylor in his capacity as a police officer."[21] In response, the Chief states in the Affidavit that: (1) the background check of Taylor, prior to hiring, was thorough; (2) Taylor was thoroughly trained and supervised during his employment with the Department; and (3) Taylor's actions were thoroughly investigated subsequent to Plaintiff's complaint.[22]

Plaintiff objects to the use of the word "thorough," arguing that it is a legal conclusion and, as such, is "insufficient to satisfy the requirements of Rule 56 [of the Federal Rules of Civil

---

[19]Docket No. 65.

[20]Docket No. 1 at 5.

[21]*Id.* at 7.

[22]Docket No. 65 at 2.

Procedure]."[23] Plaintiff is correct in his assertions that summary judgment cannot rest solely on conclusory statements, but Plaintiff has not cited any authority that requires the Court to strike or disregard the statements. More importantly, Plaintiff has failed to show that the Chief's statements are anything other than the opinions of the Chief as to the facts of the case, which would be admissible at trial and therefore proper under Fed. R. Civ. P. 56(1). If, as Plaintiff alleges, there is a "complete lack of factual basis for [the Chief's] statements,"[24] then Defendants' Motion for Partial Summary Judgment will fail. However, just as the Court is not required to take the Chief's legal conclusions at face value, the Court is also not required to take Plaintiff's assertions at face value. Plaintiff's claims are completely without merit and the Motion to Strike will be denied.

C.     MOTION TO AMEND/CORRECT COMPLAINT

Plaintiff moves the Court to allow him to amend/correct his Complaint. The proposed Amendment Complaint eliminates Plaintiff's original equal protection and due process claims, eliminates his claim of negligent hiring and discrimination against the City, and adds as defendants the Chief and the City's Manager. The proposed Amended Complaint argues that the Chief and the City Manager were deliberately indifferent to the danger posed by Taylor, and that their deliberate indifference renders them liable under § 1983 and under Utah common law. Plaintiff argues that justice requires that he be allowed to amend his complaint in light of newly discovered evidence.

Fed.R.Civ.P. 15(a) provides that, after a responsive pleading has been served, "a party may amend its pleadings only with the opposing party's written consent or the court's leave."[25] The Rule

---

[23]*Morgan v. Willingham*, 424 F.2d 200, 202 (10th Cir. 1970).

[24]Docket No. 84 at 3.

[25]Fed.R.Civ.P. 15(a)(2).

9

goes on to state that "[t]he court should freely give leave when justice so requires."[26] The Supreme Court, in *Forman v. Davis*,[27] stated:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be "freely given."[28]

A court may deny a motion for leave to amend when it would be futile.[29] A proposed amendment is futile if the complaint, as amended, would be subject to dismissal.[30] In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to the nonmoving party.[31]

Plaintiff's first proposed amendment is futile because the addition of the cause of action regarding the Chief and City Manager would be subject to dismissal on the grounds that "[a]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."[32] Plaintiff's proposed Amendment Complaint pursues claims against the City and against its Manager and the Chief, acting in their official capacities.

---

[26] *Id.*

[27] 371 U.S. 178 (1962).

[28] *Id.* at 182.

[29] *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007).

[30] *Id.*

[31] *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

[32] *Taylor v. Mecham*, 82 F.3d 1556, 1564 (10th Cir. 1996). *See also Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1316 n.2 (10th Cir. 1998)

Plaintiff's second proposed amendment is also futile, because the Utah Governmental Immunity Act retains immunity for claims arising from "assault, battery, false imprisonment, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, or violation of rights,"[33] so long as the actions in question were taken within the scope of official employment. Plaintiff has failed to allege that any actions taken by the Chief and the City Manager were outside the scope of their employment, and Plaintiff's proposed amendment arises from an alleged violation of his civil rights.

Because Plaintiff's proposed amendments are futile, the Motion to Amend will be denied.

D.   MOTION TO QUASH SUBPOENAS

Plaintiff has served two psychiatrists, Dr. O and Dr. N, with subpoenas related to the psychiatric evaluation conducted on Taylor prior to his employment with the Department. In their Motion to Quash, Defendants argue that requiring production of documents by Defendant Taylor's psychiatrists would violate psychotherapist-patient privilege.

As part of the screening process prior to hiring Taylor as a police officer, the Department required an evaluation. Taylor underwent a number of tests and interviews with Drs. O and N, who provided the Department with a summary of their conclusions. Specifically, the Department received a Report of a Suitability Assessment (the "Report") from Associated Behavior Consultants, Inc., which appears to be the entity for whom Drs. O and N work. No other documentation was received by the Department.

During the course of normal discovery, the Report was provided to Plaintiff. Now, however, Plaintiff is attempting to obtain any and all documentation retained by Drs. O and N regarding the

---

[33] Utah Code Ann. § 63G-7-301(5)(b).

evaluations. Defendant Taylor objects to the production of that documentation, arguing that such information is subject to the psychotherapist-patient privilege, and is therefore unavailable to Plaintiff as per Fed. R. Evid. 501.

Utah law is clear that the psychotherapist-patient privilege protects documents of this sort.[34] Plaintiff does not dispute this, but argues that the privilege does not extend to this situation because Taylor did not have an expectation of confidentiality. Specifically, Plaintiff argues that Taylor cannot rely on the privilege because Taylor knew that the results of the evaluation would be reported to his potential employer. Plaintiff cites to *Estate of Turnbow v. Ogden City*[35] as a case where this Court allowed disclosure of a pre-employment evaluation in the face of a claim of psychotherapist-patient privilege. However, Plaintiff completely misreads the holding in *Turnbow*. There, the Court restated that "mental health records must be protected from discovery unless it can be demonstrated that the patient has no reasonable expectation that the communications will remain private."[36] The Court then determined that there was no expectation of confidentiality in those documents provided to the prospective employer.[37] However, Plaintiff has already received all the documentation which was provided to the Department, and even relying on *Turnbow*, is entitled to nothing more. If Plaintiff desires to have access to the notes and records of Drs. O and N which were not revealed to

---

[34]*State v. Gotfrey*, 598 P.2d 1325, 1329 (Utah 1979) (holding that the psychotherapist-patient privilege is supported by both the physician-patient privilege and the priest-penitent privilege).

[35]254 F.R.D. 434 (D. Utah 2008).

[36]*Id.* at 437.

[37]*Id.* at 437-38.

the employer, he bears the burden of showing that Taylor knew that those notes and records would be shared with others. Plaintiff has failed to do so.

Plaintiff also argues that discovery should be allowed because it is possible that Dr. N may have misinterpreted the psychological testing. Plaintiff begins by casting aspersions at Dr. N's capacity to adequately interpret the results, because Dr. N is a doctor of social work, not a clinical psychiatrist. Plaintiff also casts about for other potential flaws in the testing procedure, and claims that he is entitled to see the private records of Drs. O and N because Plaintiff wishes to know whether Taylor was "properly investigated prior to hiring."[38] Assuming, *arguendo*, that Plaintiff's speculations are correct, it is not clear that it has any relevance to the claims brought by Plaintiff. Plaintiff is suing Taylor, the City, and the Department. Even if Drs. O and N were reckless, negligent, or otherwise acted wrongfully, in their evaluation of Taylor, that would still be irrelevant to whether the City and/or Department were negligent in their hiring of Taylor, for there is no evidence before the Court that the City and Department had any knowledge that Drs. O and N might engage in any form of wrongdoing with regard to the evaluation of Taylor.

The subpoenas are improper, both on relevancy grounds and because the records requested are subject to the psychotherapist-patient privilege. The Motion to Quash will therefore be granted.

### III. CONCLUSION

It is therefore

ORDERED that Defendants' *Daubert* Motion in Limine (Docket No. 66) and Motion to Quash Subpoenas (Docket No. 103) are GRANTED. It is further

---

[38] Docket No. 106 at 7.

13

ORDERED that Plaintiff's Motion to Strike Affidavit (Docket No. 83) and Motion to Amend/Correct Complaint (Docket No. 91) are DENIED.

DATED   March 3, 2009.

                          BY THE COURT:

                          _____
                          TED STEWART
                          United States District Judge