IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

---

MARK PLASCENCIA,

    Plaintiff,

vs.

CITY OF ST. GEORGE, ST. GEORGE POLICE DEPARTMENT and JARED TAYLOR,

    Defendants.

MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO EXCLUDE THE EXPERT REPORT OF DAVID DUSENBURY, GRANTING IN PART AND DENYING IN PART DEFENDANTS' RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE CRIMINAL RECORD, AND DENYING PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EXPERT OPINION OF MARLON STRATTON

Case No. 2:07-CV-2 TS

---

This matter is before the Court on Defendants' Motion to Strike Expert Report of David Dusenbury, Defendants' Renewed Motion for Partial Summary Judgment, Plaintiff's Motion in Limine to Exclude Expert Opinion of Marlon Stratton, and Plaintiff's Motion in Limine to

Exclude Criminal Record. The motions will be addressed in the order they were filed. For the reasons stated below the Court will grant Defendants' Motion to Strike the Expert Report of David Dusenbury, grant in part and deny in part Defendants' Renewed Motion for Summary Judgment, grant Plaintiff's Motion in Limine to Exclude Criminal Record and deny Plaintiff's Motion in Limine to Exclude Expert Opinion of Marlon Stratton.

## I. Background

The following facts are viewed in the light most favorable to the Plaintiff. Plaintiff is a South American individual who has been naturalized as a United States citizen.[1] Plaintiff both appears and has an accent typical of many immigrants of Hispanic origin.[2] On April 29, 2006, around 10:00 p.m., Plaintiff went to a Pizza Hut attempting to retrieve a cell phone he had misplaced while closing a restaurant the previous night.[3] Defendant Taylor, a City of St. George police officer, had come into possession of the phone when he was dispatched to a home because the residents had found some items inside.[4] When Plaintiff called his phone to try and locate it, Defendant Taylor answered the phone.[5] Although Defendant Taylor did not identify himself, he told Plaintiff to meet him at Pizza Hut to retrieve the phone.[6] When Plaintiff arrived at the Pizza Hut, he asked the cashier about his phone, at which point Defendant Taylor appeared

---

[1]Complaint, Docket No. 1 at ¶ 14.

[2]*Id*.

[3]*Id*. at ¶¶ 15-16.

[4]Depo. Jared Taylor, pg 12, ll. 6-14, Defendant's Motion for Partial Summary Judgment, Docket No. 64, Ex. A.

[5]Docket No. 1 at ¶¶ 17-18.

[6]*Id*. at ¶ 18.

from hiding.[7]

Defendant Taylor asked Plaintiff if he was the one missing the phone, to which Plaintiff responded "Yes."[8] Defendant Taylor then asked Plaintiff what color the phone was, and finally if the phone in his possession belonged to Plaintiff.[9] When Plaintiff answered affirmatively, without any further questioning, Defendant Taylor grabbed Plaintiff's arm and started to handcuff him.[10] Plaintiff was wearing a name tag identifying him as the manager of Del Taco.[11] Plaintiff alleges he did not resist nor make any threatening moves, gestures or statements either before or after being handcuffed.[12] Plaintiff did complain that the cuffs were hurting his wrists, which are inflicted with arthritis, and Defendant Taylor apparently responded to Plaintiff by tightening the cuffs, and lifting him out of the restaurant by his wrists.[13]

Defendant Taylor then pushed Plaintiff outside and told him to spread his legs.[14] Defendant Taylor allegedly struck his legs repeatedly with his baton.[15] Defendant Taylor continued to allegedly pull Plaintiff's arms backwards and vertically behind his back, forcing

---

[7] *Id.* at ¶ 19.

[8] Depo. Duran Rubio 13:25-14:10.

[9] Docket No. 1 at ¶ 19.

[10] *Id.*

[11] *Id.* at ¶ 22.

[12] *Id.* at ¶ 23.

[13] *Id.* at ¶ 24; Depo. Mark Plascencia of Jan. 24, pg 16, ll 4-12, pg. 17, ll. 10-11.

[14] Docket No. 1 at ¶ 25.

[15] *Id.*

Plaintiff to bend forward in a doubled-over position, and causing Plaintiff intense pain.[16]

Plaintiff proceeded to black out and when the cuffs were released, he was unconscious and fell to

the ground.[17]  Plaintiff was taken to the hospital where doctors suspected he had suffered a heart

attack for which he was admitted and evaluated.[18]

## II. Jurisdiction and Venue

Plaintiff's cause of action stems from 42 U.S.C. § 1983 and Utah Code § 13-7-1.

Therefore this Court has jurisdiction under 28 U.S.C. § 1343(3) and 28 U.S.C. § 1331.  Because

the state law claim stems from the same facts as the federal claims, the Court has supplemental

jurisdiction according to 28 U.S.C. § 1367(a).

## III. Discussion

<u>A. Motion to Strike Report of David Dusenbury</u>

Defendants request that this Court strike the proposed expert witness testimony and

report of David Dusenbury for all purposes including summary judgment and trial.  Defendants

argue that the report was not timely filed, that it does not meet the requirements of Fed. R. Civ.

P. 26(a)(2),  it will be unhelpful to the jury and is an attempt to introduce expert testimony

already excluded by the Court.[19]  Plaintiff argues that it was late in filing its report due to

Defendants' failure to produce documents critical to the report's opinions, that the report does

---

[16]*Id*. at ¶ 26.

[17]*Id*. at ¶ 27.

[18]*Id*. at ¶ 28.

[19]*See* Docket No. 114 (excluding Paul Masuyama, purported expert in the field of police policies and practices on the grounds that his methodology and reliability are inadequate because his experience is only in regards to Los Angeles, California, and because his opinion that Mr. Taylor used excessive force is a legal conclusion.) *id*. at pg. 5, 6-7.

comply with the rules and that it would be helpful to the jury.

Expert disclosures must be "made at the times and in the sequence that the court orders."[20]  Rule 26(a)(2) requires the disclosure of expert witnesses as required by Rule 26(a)(1) be accompanied by a written report, prepared and signed by the expert.[21]  Further the report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the data or other information considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all of the cases in which, during the previous four years, the witness testifed as an expert at trial or by deposition; (vi) a statement of the compensation to be paid for the study and testimony in the case.

Rule 37(c) states that a party who fails to disclose information or a witness under Rule 26(a) may not use the information or witness to supply evidence for a motion or at trial unless the failure is substantially justified or is harmless.[22]

The parties in this action have been bound by four different scheduling orders.[23]  The third amended scheduling order required Plaintiff to file their Rule 26(a)(2) reports on March 14, 2008.[24]  In the fourth amended scheduling order the dates are replaced by "N/A."[25]  Therefore, Defendants argue that Plaintiff's expert reports were due on March 14, 2008.  However, Plaintiff

---

[20]Fed. R. Civ. P. 26(a)(2)(C).

[21]Fed. R. Civ. P. 26(a)(2).

[22]Fed. R. Civ. P. 37(c).

[23]*See* Docket Nos. 12, 21, 51, 116.

[24]Docket No. 51.

[25]Docket No. 116.

did not file the Affidavit of David Dusenbury, with the intent of using him as an expert, until November 18, 2008.

In *Sims v. Great American Life Ins. Co.*,[26] the Tenth Circuit held the district court properly excluded an expert report as being untimely disclosed.[27] The Tenth Circuit focused on Rule 26's requirement that disclosure be made 90 days before trial unless otherwise directed by the court.[28] The *Sims* Court issued a scheduling order and subsequently amended it twice.[29] Without asking for an additional amendment, defendants filed an amended witness list five months after the deadline imposed in the court's last scheduling order.[30]

Plaintiff argues that his delay in disclosing was the result of Defendants' failure to produce documents. In support of this position, Plaintiff cites the Eleventh Circuit case, *Benson v. Tocco*,[31] for the proposition that when delay in disclosure is caused by defendants, they may not take advantage of their own obstructive behavior, nor do they suffer prejudice.[32] In *Tocco*, plaintiff "diligently and truthfully informed [defendant] as to the necessity for certain information in order to evaluate the need for expert testimony."[33] The plaintiff also "expressly identified the name of the proposed expert and explained that the need for information was

---

[26] 469 F.3d 870 (10th Cir. 2006).

[27] *Id*. at 894.

[28] *Id*.

[29] *Id*.

[30] *Id*. at 895.

[31] 113 F.3d 1203 (11th Cir. 1997).

[32] *Id*. at 1209.

[33] *Id*.

related directly to the use of an expert."[34]

The Court finds the situation in the present case more comparable to *Sims* than *Tocco*. In the present case, Plaintiff argues that its report was timely because it was filed a short time after the Court ordered disclosure of certain information. Unlike the situation in *Tocco*, Plaintiff has not alleged that he needed the undisclosed information to decide if an expert was needed in the first place. Plaintiff has not explained why the disclosure of the witness itself was five months late. Therefore, it does not meet the substantial justification required by rule 37(c). If Plaintiff had disclosed the possibility of the witness, and merely filed the report past the deadline the situation would be more in line with *Tocco*, and possibly justifiable under rule 37(c). However, that is not the situation presented to the Court.

In his memorandum in opposition, Plaintiff argues that he submitted the resume, trial testimony and fee schedule to Defendant's counsel on November 1, 2008. Although Plaintiff attached the documents, he did not attach the email, or any indication of the actual date sent.[35] Even if this information was disclosed on November 1, 2008, that date is still almost nine months after the deadline for disclosures.

The Court finds the facts of this case are almost identical to those of *Sims*. Like *Sims*, the scheduling order was amended multiple times, yet plaintiffs failed to meet the deadlines and did not request an additional amendment to the scheduling order. Moreover, Plaintiff has not given any justification for his late disclosures. Therefore the Court will exclude the expert report of David Dusenbury.

---

[34]*Id.*

[35]*See* Docket No. 122, Ex. B.

Because the Court finds that Mr. Dusenbury's testimony must be excluded on the basis of untimely disclosure it need not analyze the parties remaining arguments regarding the exclusion of his testimony.

## B. Partial Summary Judgment

Defendants move for partial summary judgment on Plaintiff's Fifth Amendment claims in his first and second causes of action. Defendant also moves for summary judgment on Plaintiff's Fourteenth Amendment substantive due process and equal protection claims and the Fourth Amendment claim encompassed in the first cause of action. Defendant asserts that there was no substantive due process violation, that Defendant Taylor was justified at the inception of the stop, and that the scope of the stop was reasonable. Defendants also argue Defendant Taylor is protected by qualified immunity. Defendants also move for summary judgment on Plaintiff's § 1983 claim against St. George for negligent hiring, supervision, training and retention, Plaintiff's second cause of action. Defendants argue that the St. George police department did not act with deliberate indifference or requisite disregard as required by § 1983. Finally, Defendants move for summary judgment on Plaintiff's third, fourth and fifth causes of action based on state law.

### i. Standard of Review

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[36] In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return

---

[36] *See* FED. R. CIV. P. 56(c).

a verdict for the nonmoving party in the face of all the evidence presented.[37]  "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials in his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial, if he does not so respond, summary judgment, if appropriate, shall be entered against him."[38]

*ii. Discussion*

> 1. First Cause of Action: Excessive and Unjustifiable Force in Seizing Plaintiff; Fourth Amendment Unreasonable Search and Seizure; Deprivation of Fifth Amendment Rights, Privileges and Immunities; Fourteenth Amendment Equal Protection and Due Process; § 1983 Based on Previous Allegations

Plaintiff argues that Defendant Taylor is not entitled to qualified immunity for unreasonable seizure in violation of the Fourth Amendment because there are disputed issues of material fact as to whether Defendant Taylor had probable cause to arrest Plaintiff.[39]  The Court agrees and finds there are too many issues of material fact in dispute for it to grant Defendants summary judgment.  However, Plaintiff does not oppose summary judgment on his Fifth Amendment claim.  Further, Plaintiff does not oppose summary judgment on its Fourteenth Amendment Due Process claims, except as to the issue of unreasonable seizure.  Therefore, the Court will grant summary judgment on those claims.

---

[37]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[38]FED. R. CIV. P. 56(e)(2).

[39]*Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

a. Seizure and Probable Cause

Defendant Taylor, as a police officer, is entitled to qualified immunity if the arrest of Plaintiff was based on probable cause. The Fourth Amendment protects "[t]he right of the people to be secure . . . against unreasonable searches and seizures."[40] "The Fourth Amendment is applicable to the states through the Fourteenth Amendment."[41] "The purpose of this amendment is 'to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials.'"[42] "[A] person is not 'seized' for purposes of the Fourth Amendment unless, 'considering all the surrounding circumstances, the police conduct 'would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.'"[43]

"The Fourth Amendment is not, of course, a guarantee against *all* searches and seizures, but only against *unreasonable* searches and seizures."[44] "[S]eizures that resemble formal arrests must be supported by probable cause to be reasonable."[45] "Probable cause exists when the "facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in

---

[40]U.S. Const. amend. IV.

[41]*Gallegos v. City of Colorado Springs*, 114 F.3d 1024, 1028 n.3 (10th Cir. 1997) (citing *Payton v. New York*, 445 U.S. 573, 576 (1980)).

[42]*Camara v. Mun. Court*, 387 U.S. 523, 528 (1967).

[43]*Gallegos*, 114 F.3d at 1028 (citing *United States v. King*, 900 F.2d 1552, 1556 (10th Cir. 1993) (quoting *Florida v. Bostick*, 501 U.S. 429, 439 (1991))).

[44]*Unites States v. Sharpe*, 470 U.S. 675, 682 (1985) (emphasis in original).

[45]*Gallegos*, 114 F.3d at 1028 (citing *United States v. Perdue*, 8 F.3d 1455, 1461 (10th Cir. 1993)).

the belief that an offense has been committed."[46]  Probable cause requires more than "mere suspicion."[47]  Probable cause is measured against an objective standard.[48]  Probable cause is determined by the totality of the circumstances, thus "a reviewing court 'must examine the facts individually in their context to determine whether rational inferences can be drawn from them' that support a probable cause determination."[49]

A police officer may, however, temporarily detain an individual, if the facts and circumstances lead the officer to reasonably conclude that "criminal activity may be afoot," that the person is armed or presently dangerous, and can point to "specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant that intrusion."[50]

Defendants argue there was probable cause, or at the very least, reasonable suspicion because the Defendant Taylor was dispatched to a home to investigate an alleged burglary and found the abandoned phone inside the house.  Therefore, when Defendant Taylor went to meet Plaintiff, who had called the phone in an attempt to retrieve it, Defendants argue that Defendant Taylor had a reasonable suspicion to believe that Plaintiff was involved with some criminal activity.  However, the facts as presented to the Court do not establish Defendants are entitled to

---

[46]*United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004) (quoting *United States v. Edwards*, 242 F.3d 928, 933 (10th Cir. 2001)).

[47]*Id*. (quoting *United States v. Morris*, 247 F.3d 1080, 1088 (10th Cir. 2001)).

[48]*Beck v. Ohio*, 379 U.S. 89, 96 (1964).

[49]*Valenzuela*, 365 F.3d at 897.

[50]*Terry v. State of Ohio*, 392 U.S. 1, 21, 30-31 (1968).

a judgment as a matter of law.

In opposition to the motion, Plaintiff presented evidence from which a jury could find the following: When Defendant Taylor arrived at the house there were no signs of a burglary;[51] The owners of the home were unable to report anything missing from their home;[52] Defendant Taylor admittedly did not question the owners of the home about other possible explanations for the phone's location;[53] nor did he thoroughly question them about the possible burglary.[54] Additionally, when Defendant Taylor first encountered Plaintiff, Plaintiff did not turn and run, or exhibit any other threatening or flight like instincts consistent with criminal activity. Viewing the facts through the totality of the circumstances approach, Defendants have not shown, as a matter of law, that Defendant Taylor had probable cause, or the lesser reasonable articulable suspicion, that Plaintiff had taken part in some criminal activity.

Even if the Court did find that the seizure was constitutional as a matter of law, it must also find it was reasonably conducted.[55] "'The use of firearms, handcuffs, and other forceful techniques' generally exceed the scope of an investigative detention and enter the realm of an

---

[51]Docket No. 128 at 14.

[52]*Id*.

[53]*See* Docket No. 128 at 15 (excerpt from deposition of Officer Richard Triplett, stating that he was told the owners of allegedly burglarized home had been at Taco Time, where Plaintiff is employed, the night before the found the phone in the morning).

[54]Taylor Depo. pg. 14 ln., 12; pg. 15 ln. 22, Docket No. 64 Ex. A.

[55]*Perdue*, 8 F.3d at 1462 (10th Cir. 1993) (citing *Terry*, 392 U.S. at 27-28).

arrest."[56] In *Perdue*, the Court found that a *Terry* stop with weapons drawn was both reasonable at its inception and reasonably conducted. In that case, the government found a field of marijuana in a rural location through aerial surveillance and a proper warrant was executed.[57] During the search 500 marijuana plants and at least one loaded gun was found on the property.[58] While the officers were conducting a search, a car pulled onto the property.[59] As soon as the car came into view of the police officers, the car stopped quickly and reversed its direction.[60] With weapons drawn, two officers stopped the car and ordered the occupants out of the car.[61] The district court found that the *Terry* stop was objectively reasonable because of the property's rural location, set back from the road, "anyone driving up the lane to the building containing the contraband was justifiable suspicious."[62] The Tenth Circuit agreed and further stated that because the officers knew guns were found on the property, the officers were justified in drawing their weapons for their own safety.[63]

The facts in this case, however, are not analogous. There are no signs that Plaintiff was a

---

[56]*Cortez v. McCauley*, 478 F.3d 1108, 1115-16 (10th Cir. 2007) (quoting *United States v. Melendez-Garcia*, 28 F.3d 1046, 1052 (10th Cir. 1994)).

[57]*Perdue*, 8 F.3d at 1458.

[58]*Id.*

[59]*Id.*

[60]*Id.*

[61]*Id.*

[62]*Id.* at 1462.

[63]*Id.*

threat, was armed, or was dangerous.[64]  Although the use of handcuffs is permitted as a

precautionary measure in a *Terry* stop, the manner in which Defendant Taylor allegedly handled

and maneuvered Plaintiff appear to go past the necessary officer safety precautionary measures.[65]

Defendant Taylor allegedly lifted and carried Plaintiff out of the restaurant by his wrists, even in

the face of complaint by Plaintiff.  Therefore the Court finds that there is evidence to support

both Plaintiff's contentions that Defendant Taylor lacked probable cause for an arrest, and that

the arrest was unreasonably conducted.  Based on the above, and the numerous material facts in

dispute, the Court does not find as a matter of law that Defendants are entitled to a ruling in their

favor.


b. Excessive Force

Defendants argue the only material fact in question is the use of the baton, and that they

are entitled to summary judgment on the excessive force claim as to the other alleged conduct

because it was reasonable.  Plaintiff counters that the entire detention was unreasonable and

excessive.  The Court agrees with Plaintiff that the use of the baton is not the sole issue of

material fact in dispute.

Excessive force claims are analyzed under the Fourth Amendment's "objective

reasonableness" standard.[66]  "[T]he question is whether the officers' actions are 'objectively

---

[64]*See Id*. at 1463 ("The Fourth Amendment does not require that officers unnecessarily risk their lives when encountering a suspect whom they reasonably believe to be armed and dangerous.").

[65]*Id*. at 1463.

[66]*Graham v. Connor*, 490 U.S. 386, 388 (1989).

reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."[67]  "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake."[68]  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[69]  Moreover, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force necessary in a particular situation."[70]  "The totality of the circumstances must be taken into account in each particular case with careful attention paid to the severity of the crime, whether the suspect posed an immediate threat, and whether he was actively resisting arrest or attempting to flee."[71]  Therefore, "conduct that passes constitutional muster in one case" may violate the Fourth Amendment in another.[72]  Whether police used excessive force in a § 1983 claim is generally a fact question best answered by the jury.[73]

---

[67]*Id*. at 397.

[68]*Id*. at 396.

[69]*Id*.; *See also Terry*, 392 U.S. at 20-22..

[70]*Graham*, 490 U.S. at 397.

[71]*Grass*, 322 Fed.Appx. at 589 (citing *Graham*, 490 U.S. at 396).

[72]*Id*.

[73]*See Buck v. City of Alberquerque*, 549 F.3d 1269, 1288 (10th Cir. 2008).

Defendants argue that a de minimis injury, like tight handcuffs, cannot support a Fourth Amendment claim as a matter of law. Defendant is correct on this point.[74] In *Cortez v. McCauley*,[75] the court denied a claim for excessive force based on unduly tight handcuffs explaining that a claim for excessive force requires some actual physical or emotional injury that is not de minimis.[76] However, the *Cortez* court also specifically did not overrule prior precedent holding that "an excessive force claim is not dependant on physical injury or even physical contact, but on 'patently unreasonable conduct' by the arresting officer."[77] The ruling in *Cortez* has subsequently been construed narrowly because the accusation did not involve "unjustified and actively abusive behavior by the arresting officer."[78] In fact the Tenth Circuit has reiterated "that it is the unwarranted nature of the force, rather than its potential for physical harm"[79] that renders conduct unconstitutionally excessive because the Fourth Amendment does not limit "the right to be secure from physical harm; [it] include[s] liberty, property and privacy interests-a person's sense of security and *individual dignity*."[80] At least one circuit has held that any force

---

[74]*Grass v. Johnson*, 322 Fed.Appx. 586, 588 (10th Cir. 2009).

[75]478 F.3d 1108, 1129 (10th Cir. 2007).

[76]*Id.*

[77]*Grass*, 322 Fed.Appx. at 590 (citing *Cortez*, 478 F.3d at 1129).

[78]*Id.* at 589.

[79]*Id.* (citing *Cortez*, 478 F.3d at 1131).

[80]*Id.* at 590.

used after a suspect has been subdued and no longer poses a threat to anyone, is excessive.[81]

Plaintiff presents evidence that Defendant Taylor placed handcuffs on him that were too tight, then lifted him up from his wrists, contorted his arms in an awkward and painful position, and repeatedly hit his legs with a police baton. He further presented evidence that the combination of the events was so stressful that Plaintiff passed out on the sidewalk, and was taken to the hospital. Although Plaintiff might have been overly sensitive to the handcuffs due to his arthritic condition, it is the "patently unreasonable conduct" and the "unwarranted nature of the force" by the officer rather than the potential for injury that matters. As previously stated, there is no evidence that Plaintiff was armed, dangerous or a threat. Morever, as previously discussed, in a § 1983 claim, the question of excessive force is normally one for the jury. Therefore, summary judgment is inappropriate.


c. Qualified Immunity

Defendant argues that he is entitled to qualified immunity because he did not violate Plaintiff's constitutional rights. Defendant further argues that even if there was a constitutional violation, the violated right was not clearly established. Plaintiff counters that Defendant Taylor both violated his constitutional rights and that those rights were clearly established.

Qualified immunity generally shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly

---

[81]*Id.* (citing *Baker v. City of Hamilton*, 471 F.3d 601, 607 (6th Cir. 2006); *Fontana v. Haskin*, 262 F.3d 871, 880 (9th Cir. 2001)).

established statutory or constitutional rights known to a reasonable person.[82] "When a defendant raises a claim of qualified immunity, the burden shifts to the plaintiff to show that defendant is not entitled to that immunity."[83] A two part inquiry is required to determine whether a government official is entitled to the protection of qualified immunity.[84] A court must decide "whether the facts alleged, viewed in the light most favorable to the party asserting injury, show the officials conduct violated a constitutional right;"[85] and "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted," in other words, was this right clearly established.[86] The sequence in which the court answers these questions is up to the court.[87]

"Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right."[88] "Qualified immunity is 'an immunity from suit rather than a

---

[82] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[83] *Douglas v. Dobbs*, 419 F.3d 1097, 1100 (10th Cir. 2005) (citing *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)).

[84] *Id*.

[85] *Id*. (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)); *Pearson v. Callahan*, 129 S.Ct. 808, 815-16 (2009).

[86] *Douglas*, 419 F.3d at 1100 (citing *Saucier*, 533 U.S. at 202); *Pearson*, 129 S.Ct. at 815-816.

[87] *Pearson*, 129 S.Ct. at 818 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qaulified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

[88] *Id.* at 816.

mere defense to liability.'"[89]  If plaintiff shows there was a violation of a clearly established right the burden shifts back to defendant who must then prove that "'no genuine issues of material fact' exist and the defendant 'is entitled to judgment as a matter of law.'"[90]  "When the record shows an unresolved dispute of historical fact relevant to this immunity analysis, a motion for summary judgment based on qualified immunity should be properly declined."[91]  "Summary judgment motions may not be granted on any excessive force claims under § 1983 for which *any* genuine issue of material fact remains--regardless of whether the potential grant would arise from qualified immunity or from a showing that the officer merely had not committed a constitutional violation."[92]

A right is clearly established when it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right."[93]  However, the very action in question need not have been previously held unlawful for an official to be aware it violates the right, it must just be apparent in light of pre-existing law that the act in question was unlawful.[94]  The relevant inquiry, however, must be made in the specific context of the case.[95]  A plaintiff may not simply

---

[89]*Id*. at 818.

[90]*Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002) (quoting *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001)).

[91]*Id*. (internal citations omitted).

[92]*Id*. (emphasis in original) (citing *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997)).

[93]*Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

[94]*Id*.

[95]*Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

allege a Fourth Amendment violation in the abstract, but must demonstrate through relevant prior cases that a defendant's actions in a "more particularized sense" constitute a violation of a constitutional right.[96]  Prior decisions must only give "reasonable warning that the conduct then at issue violated constitutional rights."[97]  If the Court finds there is no constitutional violation, it does not have to consider the issue of qualified immunity.[98]

Defendants argue that there must be a specific case directly on point in order for plaintiff to show that the law was clearly established.  The Court does not find the standard to be so rigorous.  As clearly stated by the Supreme Court, the very act in question does not need to have been previously held unlawful for an official to be aware that a right has been violated.[99]  "Officials can still be on notice that their conduct violated established law even in novel factual circumstances."[100]  Regardless, as the Court has already discussed, whether a constitutional violation occurred is an issue of material fact that has not been clearly established.  Therefore, the Court may not grant Defendants summary judgment.

2. Second Cause of Action: Negligence in Hiring, Training; St. George Violations of Fourth Amendment Unreasonable Search and Seizure; St. George Fifth Amendment Violations of Privileges and Immunities– Due Process; St. George Fourteenth Amendment Violation of Equal Protection and Due Process; St. George § 1983

---

[96]*Douglas* 419 F.3d at 1101.

[97]*United States v. Lanier*, 520 U.S. 259, 269 (1997).

[98]*Christiansen v. City of Tulsa*, 332 F.3d 1270, 1278 (10th Cir. 2003).

[99]*Anderson*, 483 U.S. at 640; *Hope v. Pelzer*, 536 U.S. 730, 740 (2002).

[100]*Hope*, 536 U.S at 741.

Plaintiff argues that Defendants' summary judgment motion on his claim against St. George for violation of Plaintiff's Fourth Amendment rights should be denied because there are disputed issues of fact material to the issue of whether the City's decision to hire Defendant Taylor was a policy decision.

Plaintiff does not oppose summary judgment on its Fifth Amendment allegations. Therefore, summary judgment will be granted on that claim.

To establish municipal liability, a plaintiff must show: 1) the existence of a municipal policy or custom and 2) a direct causal link between the policy or custom and the injury alleged.[101] In order to prevail on a § 1983 claim for wrongful hiring, the Plaintiff must show that there was specific evidence that "would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right."[102] A § 1983 claim for negligent hiring can subject a municipality to liability when supported by "a finding that [the officer in question] was highly likely to inflict the particular injury suffered by the plaintiff."[103]

The Court finds there is sufficient evidence for a jury to find the St. George police department was negligent in its hiring, training and supervision of Defendant Taylor. Further, the Court finds Plaintiff has at least made a prima facie showing sufficient to establish municipal liability. The second background check on Defendant, reiterated the findings of the first

---

[101]*Graves*, 450 F.3d at 1218 (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)).

[102]*Board of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 411 (1997).

[103]*Id.*

background check and concluded that he was a moderate risk to hire as a reserve officer.[104]  At

the time of this second investigation he was employed as a police officer for the Dixie State

College.[105]  Evidence produced in the background check included that of a temper, pornography

use, and gender bias.[106]  Interviews from co-workers revealed that he was "causing problems," "is

just not ready," "is in the rookie syndrome and making some bad judgments," and "has some

pretty black and white thinking."[107]

The facts as alleged by Plaintiff, if true, could be seen by a reasonable jury as a

demonstration of Defendant Taylor's black and white thinking, poor judgment and unreadiness.

This was known to St. George and could be seen as leading to the deprivation of Plaintiff's

Constitutional rights.   Therefore, the Court finds summary judgment is inappropriate.

> 3. Third, Fourth and Fifth Causes of Action: Taylor Wrongful and Negligent
> Injury of Plaintiff, Excessive Force; St. George Negligent and Improper
> Investigation, Hiring, Supervision, Train, Monitor Taylor; St. George
> Discrimination, Utah Code § 13-7-3.

Plaintiff does not oppose summary judgement on its Third, Fourth or Fifth causes of

action, therefore the Court will grant summary judgment on these claims.

---

[104]Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, Docket No. 85, Ex. C at 2. ("After interviewing [Defendant] for a second time and interviewing his new references this candidate is still a moderate if not a high risk to hire as a full time police officer."

[105]*Id.*

[106]*Id.*

[107]*Id.*

## C. Plaintiff's Motion in Limine to Exclude Criminal Record

Plaintiff filed a motion to exclude any records of criminal complaints, pleas, fines, restitution or sentences, not limited to those included in the records attached as Exhibit A, because they are irrelevant and highly prejudicial. Defendants do not object to this exclusion. Therefore the Court will grant Plaintiff's Motion.

## D. Plaintiff's Motion in Limine to Exclude Expert Opinion of Marlon Stratton

Plaintiff moves to exclude any opinion testimony of Marlon Stratton, Chief of the St. George Police Department, including any opinions expressed in any "Internal Investigative Report." The parties do not dispute that Mr. Stratton is not an expert and will be testifying solely as a fact witness. Plaintiff argues that testimony from Mr. Stratton regarding the investigation of the circumstances giving rise to this litigation will be overly prejudicial because it will be coming from the Chief of Police. Plaintiff requests that Mr. Stratton's testimony be limited to his personal knowledge and area of personal responsibility.

It is not clear what testimony from Chief Stratton Plaintiff seeks to exclude. It is clear that he is not an expert, and that his testimony will be related to his personal knowledge. Moreover, the Court, in a previous order, denied Plaintiff's Motion to Strike Affidavit of Marlon Stratton, which contained testimony related to the internal investigation which Plaintiff now seeks excluded.[108] In the previous, motion Plaintiff sought to exclude statements such as "thorough investigation" arguing the statement is a legal conclusion and therefore insufficient to satisfy Defendants' first motion for summary judgment.[109] In denying that Motion and holding

---

[108] *See* Docket No. 114.

[109] FED. R. CIV. P 56

that it could consider the statement at the summary judgment stage, the Court also found that "Plaintiff has failed to show that the Chief's statements are anything other than the opinions of the Chief as to the facts of the case, which would be admissible at trial."[110]  Plaintiff has not demonstrated any new circumstances or provided the Court with a reason to vacate its previous finding.  The use of the word "thorough" in the chief's statements, seems only to express his perception of the events.  Plaintiff will have the opportunity to explore the "thoroughness" of Defendant Taylor's training, supervision, and the incident investigation on cross examination. To the extent that testimony from a Chief of Police is prejudicial, Plaintiff can make more specific objections at trial.

## IV. Conclusion

Based on the above it is hereby

ORDERED that Defendants' Motion to Strike Expert Report of David Dusenbury (Docket No. 118) is GRANTED.  It is further

ORDERED that Defendants' Renewed Motion for Partial Summary Judgment (Docket No. 120) is GRANTED IN PART AND DENIED IN PART in accordance with this ORDER.  It is further

ORDERED that Plaintiff's Motion In Limine to Exclude Criminal Record (Docket No. 123) is GRANTED.  It is further

ORDERED that Plaintiff's Motion In Limine to Exclude Expert Opinion of Marlon Stratton (Docket No. 124) is DENIED.

The hearing set for March 11, 2010, is hereby STRICKEN.

---

[110]Docket No. at 9.

DATED   March 8, 2010.

BY THE COURT:

_____

TED STEWART
United States District Judge