# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT
## OFFICE OF THE CLERK

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Elisabeth A. Shumaker
Clerk of Court

April 17, 2013

Douglas E. Cressler
Chief Deputy Clerk

Mr. D. Mark Jones
United States District Court for the District of Utah
Office of the Clerk
350 South Main Street
150 Frank E. Moss U.S. Courthouse
Salt Lake City, UT 84101

**RE:       11-4197, Plascencia v. Taylor, et al**
           Dist/Ag docket: 2:07-CV-00002-TS

Dear Clerk:

Please be advised that the mandate for this case has issued today. Please file accordingly in the records of your court.

Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker
Clerk of the Court

cc:     Kathleen Josephine Abke
        Ashley McIntosh Gregson
        Kathleen Erin McDonald
        Stanley Clark Newhall
        Peter Stirba

EAS/bv

## UNITED STATES COURT OF APPEALS
### FOR THE TENTH CIRCUIT
### OFFICE OF THE CLERK

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Elisabeth A. Shumaker
Clerk of Court

March 26, 2013

Douglas E. Cressler
Chief Deputy Clerk

Ms. Kathleen Josephine Abke
Ms. Ashley McIntosh Gregson
Mr. Peter Stirba
Stirba & Associates
215 South State Street, Suite 750
P.O. Box 810
Salt Lake City, UT 84110

**RE:    11-4197, Plascencia v. Taylor, et al**
            Dist/Ag docket: 2:07-CV-00002-TS

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40, any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. If requesting rehearing en banc, the requesting party must file 18 paper copies with the clerk, in addition to satisfying all Electronic Case Filing requirements. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker
Clerk of the Court


cc:      Kathleen Erin McDonald
         Stanley Clark Newhall


EAS/sls

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

**March 26, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

---

MARK PLASCENCIA,

      Plaintiff–Appellee,

v.

JARED TAYLOR,

      Defendant–Appellant.

----------------------------------

ST. GEORGE CITY POLICE
DEPARTMENT; ST. GEORGE CITY,

      Defendants.

No. 11-4197
(D.C. No. 2:07-CV-00002 TS)
(D. Utah)

---

## ORDER AND JUDGMENT[*]

---

Before **LUCERO**, **HARTZ**, and **MATHESON**, Circuit Judges.

---

      [*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

Jared Taylor appeals following a jury verdict finding him liable for violating Mark Plascencia's Fourth Amendment rights. Taylor raises four arguments on appeal: (1) the district court erred in denying his motion for judgment as a matter of law under Federal Rule of Civil Procedure 50; (2) the district court committed reversible error when it submitted Instruction No. 24A to the jury; (3) there was insufficient evidence to support the jury's verdict; and (4) he is entitled to qualified immunity on Plascencia's seizure claim. We conclude that the district court did not err in denying Taylor's motion for judgment as a matter of law or in submitting the jury instruction, that Taylor's assertions of insufficient evidence were not properly preserved for our review, and that Taylor is not entitled to qualified immunity. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

**I**

On April 29, 2006, Officer Jared Taylor of the City of St. George, Utah, police department was dispatched to the home of Davey and Elaine Burton to investigate a possible burglary. The Burtons had found a cell phone in their home that did not belong to them, and they did not know how it had arrived in their home. Shortly after Taylor arrived, the cell phone rang. An unidentified caller stated that the phone belonged to him and that he had lost it earlier that day. Taylor did not identify himself as a police officer, but asked the caller to meet him at a nearby Pizza Hut to retrieve the phone. With the exception of the cell phone, Taylor found no evidence that an unlawful entry had

2

occurred.

A short time later, Mark Plascencia and Duran Jacob Rubio arrived at the Pizza Hut to retrieve Plascencia's phone.  Plascencia and Rubio were co-workers, and Plascencia's work phone had gone missing earlier that day.  When Taylor approached the men, Plascencia identified himself as the owner of the phone.  Taylor grabbed Plascencia's hands, cuffing them behind his back.  Plascencia cried out in pain and informed Taylor that the handcuffs were too tight and that he had arthritis in his hands and wrists.  Taylor later testified that when he handcuffed Plascencia there was no evidence that Plascencia was carrying a weapon, threatening anyone, resisting arrest, or attempting to flee; rather, he had handcuffed Plascencia because Plascencia was a felony burglary suspect.

Taylor then pushed Plascencia outside of the restaurant by his cuffed hands. Rubio and Plascencia testified at trial that Taylor proceeded to use a baton-like stick to hit Plascencia on the inside of his legs to spread them.  As Taylor searched Plascencia for weapons, he continued to raise Plascencia's arms behind his back, and Plascencia again cried out in pain.  Finding no weapons, Taylor removed the handcuffs.  At approximately the same time, Plascencia passed out and fell towards the ground.  Plascencia's fall was broken by either Rubio or both Rubio and Taylor.

Plascencia was taken by ambulance to the Dixie Regional Medical Center. Doctors were concerned that Plascencia had suffered a heart attack and kept him overnight for observation.

Two days after the incident, Plascencia met with Sergeant Vance Bithell, who was conducting an investigation into the encounter for the St. George Police Department. Plascencia informed Bithell that Taylor had hit him. Bithell took photographs of bruises on Plascencia's legs that were caused either by Plascencia's fall or Taylor's stick, which were entered into evidence at trial.

In his 42 U.S.C. § 1983 suit, Plascencia alleged that Taylor violated his right to be free from unreasonable searches and seizures.[1] Taylor moved for partial summary judgment arguing that he was entitled to qualified immunity. The district court denied qualified immunity, determining that genuine disputes of material fact existed as to whether Taylor violated clearly established law. Taylor did not renew his claim of qualified immunity in a subsequent Rule 50(a) or 50(b) motion at trial.

At the close of evidence Taylor moved for judgment as a matter of law, asserting that the seizure was an investigative detention rather than an arrest, and that the detention was reasonable. Taylor acknowledged that Plascencia's excessive force claim should be submitted to the jury. The district court denied the motion, finding disputed issues of fact

---

[1] Plascencia's complaint asserted multiple claims against Taylor, the City of St. George, and the St. George Police Department. Upon Taylor's motion for partial summary judgment, the district court dismissed the majority of Plascencia's claims against Taylor, with the exception of Plascencia's claims of unreasonable seizure and use of excessive force. Plascencia's claims against the police department and several of his claims against the City were dismissed by stipulation before trial. The remaining claim against the City was dismissed when the district court granted its Rule 50 motion. Only the unreasonable seizure and excessive force claims are before us.

precluded a determination of whether the stop was an arrest.

The jury found that Taylor had unreasonably seized Plascencia and had used excessive force, and awarded Plascencia $5,000 in damages. Taylor timely appeals.

## II

### A

Taylor claims the district court erred in denying his motion for judgment as a matter of law under Fed. R. Civ. P. 50. He contends that the district court should have concluded that the seizure was an investigatory stop supported by reasonable suspicion. The district court denied Taylor's motion, holding that there was a dispute over what occurred before Taylor handcuffed Plascencia, how much force Taylor used, and how long the detention lasted.

Judgment as a matter of law is appropriate if the "evidence presented at trial does not permit a reasonable jury to find for the non-movant." Manzanares v. Higdon, 575 F.3d 1135, 1142 (10th Cir. 2009) (citations omitted). Because a motion for judgment as a matter of law presents "purely legal arguments, we review a district court's disposition of such de novo." Id. (citation omitted). We may overturn the district court's determination if we conclude that "the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position." Id. (quotation omitted).

Taylor advances two arguments in support of his Rule 50 motion. First, he argues that the district court erred in considering the degree of force employed by Taylor in its determination of the type of seizure that occurred. Second, he argues that the facts the

5

district court cited as in dispute, with the exception of the length of the detention, were immaterial to the court's determination of whether an arrest or an investigative stop took place.  Based on these assertions, Taylor argues the jury's verdict as to unlawful seizure was unsupported by the evidence.

The Fourth Amendment protects individuals from "unreasonable searches and seizures."  U.S. Const. amend. IV.  The Supreme Court "has identified three types of police/citizen encounters:  consensual encounters, investigative stops, and arrests." Cortez v. McCauley, 478 F.3d 1108, 1115 (10th Cir. 2007) (en banc) (citation and quotations omitted).  Consensual encounters are not seizures under the Fourth Amendment.  Id.  "An investigative detention, also called a Terry stop, is an encounter in which police may stop and briefly detain a person for investigative purposes."  Morris v. Noe, 672 F.3d 1185, 1191 (10th Cir. 2012) (quotation omitted).  A valid investigatory stop requires "reasonable suspicion supported by articulable facts that criminal activity may be afoot."  Id. (quotation omitted).  "[A]n arrest is a form of Fourth Amendment seizure characterized by the intrusive or lengthy nature of the detention."  Id. at 1192.  To execute a valid arrest, the Fourth Amendment requires an officer to have "probable cause to believe a person committed a crime."  Cortez, 478 F.3d at 1115.  These "categories are not static and may escalate from one to another."  United States v. Jones, 701 F.3d 1300, 1312 (10th Cir. 2012) (quotation omitted).

The parties agree that a seizure took place and that Taylor lacked probable cause to arrest Plascencia.  They dispute whether the seizure was an arrest or an investigatory

stop.  "An arrest is distinguished [from an investigatory stop] by the involuntary, highly

intrusive nature of the encounter."  Cortez, 478 F.3d at 1115 (quotation omitted); see also

Terry v. Ohio, 392 U.S. 1, 26 (1968) ("An arrest is a wholly different kind of intrusion

upon individual freedom from a limited search for weapons . . . .").  Therefore, we

routinely look to the degree of intrusiveness to determine whether a seizure was an

investigative stop or an arrest.  See e.g., Manzanares, 575 F.3d at 1149-50 (10th Cir.

2009) (considering length of encounter and use of force to determine the type of seizure).

        Use of forceful measures does not automatically convert an investigative detention

into an arrest.  See United States v. Shareef, 100 F.3d 1491, 1502 (10th Cir. 1996).

However, the "use of firearms, handcuffs, and other forceful techniques generally exceed

the scope of an investigative detention and enter the realm of an arrest."  Cortez, 478 F.3d

at 1116.  Our precedent is thus clear—contrary to Taylor's argument—that the level of

force employed by an officer is relevant to the inquiry of whether a seizure was a Terry

stop or an arrest.  See id. at 1130 ("[A]n unreasonable level of force transforms a Terry

detention into an arrest requiring probable cause." (quotation omitted)); see also

Lundstrom v. Romero, 616 F.3d 1108, 1120 (10th Cir. 2010) (use of forceful techniques

relevant to classification of detention);  Manzanares, 575 F.3d at 1149 ("[B]ased both on

the duration of the detention and the use of forceful measures, we hold that Manzanares

was arrested . . . ."); Gallegos v. City of Colorado Springs, 114 F.3d 1024, 1030 (10th

Cir. 1997) (examining "whether the Terry stop escalated into an arrest following the

application of the arm bar maneuver," a forceful technique).

Taylor contends that our extensive precedent considering the use of force in determining whether a seizure was an arrest or an investigatory stop confuses the validity of a seizure with the reasonableness of its scope.[2] He argues that under Terry and its progeny, a seizure that begins as an investigative detention and then exceeds the proper scope of a Terry stop may give rise to a claim for excessive force but does not become an arrest. Taylor cites no clear support for this proposition, and we have found none. To the contrary, in Terry itself the Supreme Court explicitly distinguished an investigative stop from an arrest by the "kind of intrusion upon individual freedom" exerted by an officer on the suspect. Terry, 392 U.S. at 26. And in Florida v. Royer, 460 U.S. 491 (1983) (plurality opinion), the Court indicated that the level of intrusiveness can escalate a valid Terry stop into an illegal arrest. Id. at 500-01 (holding that a lawful questioning became an illegal arrest based in part on the "scope of the intrusion").

Moreover, we are not alone among our sibling circuits in considering the use of force a factor in determining whether an investigatory stop becomes an arrest requiring probable cause. See e.g., United States v. Newell, 596 F.3d 876, 879 (8th Cir. 2010) ("A Terry stop may become an arrest, requiring probable cause, if . . . officers use

---

[2] The jury made two findings: Taylor violated Plascencia's Fourth Amendment rights (1) to be free from unreasonable seizures, and (2) to be free from use of excessive force. These are two separate theories of liability; therefore, we must determine whether the seizure was unreasonable as a separate question from whether there was excessive force. See Cortez, 478 F.3d at 1112 ("We reject the notion that an excessive force claim is subsumed in an unlawful arrest claim in the facts presented by this case."); see also Romero v. Story, 672 F.3d 880, 882 (10th Cir. 2012) (analyzing unlawful arrest and excessive force claims separately).

unreasonable force."); United States v. Guzman-Padilla, 573 F.3d 865, 884 (9th Cir. 2009) ("[I]t is well-established that intrusive measures may convert a stop into an arrest" under certain circumstances including those in which "force is used." (quotation omitted)); Morelli v. Webster, 552 F.3d 12, 20 (1st Cir. 2009) ("Hallmark factors such as physical restraint or a show of force may be suggestive" in determining whether a Terry stop was a "de facto arrest.").  Based on the foregoing authorities, we reject Taylor's claim that the use of force is irrelevant in determining whether an individual has been arrested.

Taylor also contends that the facts material to the district court's determination of whether the seizure was a stop or an arrest were not in dispute.  As discussed above, however, the level of force employed is an important component of our inquiry.  See Cortez, 478 F.3d at 1130.  And Taylor admitted below that the level of force used was in dispute.  Further, the parties disagreed as to the events that occurred before Taylor placed the handcuffs on Plascencia, which informs whether the use of force was reasonable and also whether the stop constituted an arrest.  See Manzanares, 575 F.3d at 1148 ("Forceful methods may be used during an investigative detention short of arrest only when such methods are necessary for officer protection." (citation omitted)).  Finally, the district court found the length of the detention to be in dispute at trial, and Taylor concedes that the length of a seizure is material to the determination of the type of seizure.  Because material facts relating to Taylor's use of force, the reasonableness of such force, and the length of time Plascencia was in handcuffs were in dispute and relevant to the

determination of whether the seizure was a stop or an arrest, we reject Taylor's argument that the material facts were undisputed.

Finally, we agree with the district court that the evidence was sufficient to uphold the jury's verdict as to unlawful seizure.  Viewing the evidence in the light most favorable to Plascencia, the jury could have concluded that Taylor:  (1) immediately handcuffed Plascencia without any objectively reasonable officer safety concern; (2) applied several forceful techniques by repeatedly lifting Plascenicia's arms behind his back and repeatedly striking Plascencia's legs, again without any objectively reasonable safety concerns; and (3) forcefully moved Plascencia from the restaurant to a different location without any reasonable basis for doing so.  See Cortez, 478 F.3d at 1115-16 ("[U]se of firearms, handcuffs, and other forceful techniques generally exceed the scope of an investigative detention and enter the realm of an arrest." (quotation and citation committed)); id. at 1130 ("[A]n unreasonable level of force transforms a Terry detention into an arrest requiring probable cause." (quotation omitted)); see also Royer, 460 U.S. at 504 (law enforcement's "moving a suspect from one location to another during an investigatory detention" may suggest an arrest absent safety and security concerns); United States v. White, 584 F.3d 935, 953 (10th Cir. 2009) ("[P]olice may move a suspect without exceeding the bounds of an investigative detention when it is a reasonable means of achieving the legitimate goals of the detention given the specific circumstances of the case." (quotation omitted)).

**B**

10

Taylor next appeals the district court's submission of Instruction No. 24A to the jury.  "We review de novo whether the court erroneously instructed the jury on the applicable law." Gonzales v. Duran, 590 F.3d 855, 859 (10th Cir. 2009) (quotation omitted).  However, we "review the district court's decision to give or to refuse a particular jury instruction for abuse of discretion." United States v. Diaz, 679 F.3d 1183, 1188 (10th Cir. 2012) (quotation omitted).  "Faulty jury instructions require reversal when (1) we have substantial doubt whether the instructions, considered as a whole, properly guided the jury in its deliberations; and (2) when a deficient jury instruction is prejudicial." Jones v. United Parcel Serv., Inc., 674 F.3d 1187, 1198 (10th Cir.) (quotation omitted), cert. denied, 133 S. Ct. 413 (2012).

Jury Instruction No. 24A stated as follows:

In this case, Mr. Plascencia claims that Mr. Taylor arrested him, but Mr. Taylor claims that he stopped or temporarily detained him.  You must decide whether the encounter between Mr. Plascencia and Mr. Taylor was an investigative detention, or if it was, or at some point became, an arrest. In deciding what occurred, you should consider all relevant circumstances. There is no one fact that will determine whether the encounter was a stop or an arrest, but the key question is how intrusive the encounter was.  In determining how intrusive the encounter was, you should consider: whether a firearm, handcuffs, or forceful techniques were used; the length of the detention; whether Mr. Plascencia was moved from one place to another; and any other facts you find relevant to the intrusiveness of the seizure.

Generally the use of firearms, handcuffs, or other forceful techniques exceeds the scope of a stop and enters into the realm of an arrest.  However, even if such measures were used, if you find that Mr. Taylor used them because he reasonably believed that such measures were necessary to protect his own safety, then the use of such measures does not necessarily mean that Mr. Plascencia was arrested.

Generally the movement of a detained person from one place to

11

another does not turn a stop into an arrest as long as the movement of the
person is reasonably related to the goals of the stop.

Taylor argues that this instruction misstated the law because "use of force and the
reasonableness of the force does [sic] not inform the question of whether the seizure was
an arrest or an investigatory detention." For the reasons stated in Section II.A, supra, we
reject this argument.

Taylor also contends that Instruction 24A rests on contradictory Tenth Circuit law.
He asserts that language from our en banc opinion in Cortez stating that the use of
"firearms, handcuffs, and other forceful techniques generally exceed the scope of an
investigative detention and enter the realm of an arrest," 478 F.3d at 1115-1116
(quotation omitted), conflicts with language in Gallegos that "a Terry stop does not
automatically elevate into an arrest where police officers use handcuffs on a suspect,"
114 F.3d at 1030. We see no conflict in these statements, particularly in light of our
explanation in Gallegos that police may use handcuffs and other forceful measures during
a Terry stop if such steps are "reasonably necessary to protect their personal safety and to
maintain the status quo." Id. "As long as the precautionary measures employed by
officers during a Terry stop are reasonable," we explained, "they will be permitted
without a showing of probable cause." Id. This statement squares neatly with our
holding in Cortez that "an unreasonable level of force transforms a Terry detention into
an arrest requiring probable cause." 478 F.3d at 1130 (quotation omitted).

In his final challenge to Instruction 24A, Taylor argues that the district court

impermissibly submitted a question of law—whether the detention was a <u>Terry</u> stop or an arrest—to the jury.  In <u>Gonzales v. Duran</u>, we noted that "[l]egal questions are reserved to the courts."  590 F.3d at 860.  When a purely legal issue is intertwined with a question of fact, the preferred approach is for the district court to "submit special interrogatories to the jury to establish the facts."  <u>Id.</u> at 859.  However, if "narrow issues of disputed material fact are dispositive" of the legal question, a court may submit the mixed question to the jury along with detailed instructions as to the legal issue.  <u>Id.</u> at 859-60.  Those conditions are satisfied in this case.  We agree with the district court that relatively few material facts were in dispute, <u>see</u> Section II.A, <u>supra</u>, and the court accurately summarized for the jury the considerations relevant to the issue.  This approach was expressly approved in <u>Gonzales</u>, and we see no reversible error.

## C

Taylor also seeks to challenge the sufficiency of the evidence underlying the jury's verdict as to excessive force.  However, he failed to file either a Rule 50(a) or 50(b) motion challenging the sufficiency of the evidence on this claim.  Instead, Taylor affirmatively waived this issue.  In his Rule 50 motion regarding Plascencia's unreasonable seizure claim, Taylor admitted that "there are facts in dispute concerning the excessive force claim" and that the "issue cannot be resolved by the Court as a matter of law."

"To preserve a sufficiency of the evidence claim for appellate review, a party must move for judgment as a matter of law . . . at the close of the evidence."  <u>Miller v. Eby</u>

13

Realty Group LLC, 396 F.3d 1105, 1114 (10th Cir. 2005) (quotation and ellipses

omitted).  Thus "a failure to comply with Rule 50(b) forecloses a party's challenge to the

sufficiency of the evidence."  Kelley v. City of Albuquerque, 542 F.3d 802, 817 (10th

Cir. 2008) (quotation and alteration omitted).

Although Taylor failed to file a Rule 50 motion, Plascencia does not argue that

Taylor has waived his sufficiency of the evidence claim.  Our court has not yet

determined whether the requirement that a sufficiency of the evidence claim be raised in

a Rule 50(b) motion is an "inflexible claim-processing rule[]" or a jurisdictional

limitation.  Id. at 817 n.15.  We need not decide the issue here.  Like jurisdictional rules,

"[w]e may consider an issue of waiver sua sponte."  United States v. Mancera-Perez, 505

F.3d 1054, 1057 n.3 (10th Cir. 2007).  Doing so is particularly appropriate when the

waiver has an invited error component, based on concern for "the integrity and proper

administration of justice."  Id.

Taylor expressly conceded that judgment as a matter of law was improper as to

Plascencia's excessive force claim.  We exercise our discretion to raise his waiver sua

sponte in light of this concession, and decline to address the merits of his claim.

**D**

Taylor also appeals the denial of his motion for summary judgment asserting

qualified immunity with respect to Plascencia's unlawful seizure claim.  Taylor did not

file an interlocutory appeal of the denial, nor did he file a Rule 50(a) or (b) motion

renewing his claim of qualified immunity.

14

Generally, a party may not "appeal an order denying summary judgment [on qualified immunity] after a full trial on the merits." Ortiz v. Jordan, 131 S. Ct. 884, 889 (2011). Rather, a party ordinarily must renew a qualified immunity argument under Rule 50. Id. However, the Ortiz Court left open the possibility that a "qualified immunity plea raising an issue of a purely legal nature" may be "preserved for appeal by an unsuccessful motion for summary judgment, and need not be brought up again under Rule 50(b)." Id. at 892 (quotation omitted). Our circuit recognized this exception prior to Ortiz. See Haberman v. Hartford Ins. Grp., 443 F.3d 1257, 1264 (10th Cir. 2006). And we have stated that the exception remains valid following the Ortiz decision. See Stewart v. Beach, 701 F.3d 1322, 1329 n.7 (10th Cir. 2012); see also Feld v. Feld, 688 F.3d 779, 782 (D.C. Cir. 2012) (noting that a majority of circuits recognize this exception for purely legal issues).

Taylor argues that the law was not clearly established that "the use of handcuffs indicated an arrest requiring probable cause." We reject Taylor's mischaracterization of the district court's ruling. The district court did not adopt a per se rule that the use of handcuffs constitutes an arrest. It instructed the jury that if Taylor used handcuffs "because he reasonably believed that such measures were necessary to protect his own safety, then the use of such measures does not necessarily mean that Mr. Plascencia was arrested." This statement is consistent with clearly established Tenth Circuit law at the time of the arrest. See Shareef, 100 F.3d at 1508 ("[T]here was no reasonable basis for keeping [defendants] in handcuffs. Therefore, we must conclude that at that point their

15

detention became an unlawful arrest."); see also Gallegos, 114 F.3d at 1030 ("As long as the precautionary measures [such as handcuffing] employed by officers during a Terry stop are reasonable, they will be permitted without a showing of probable cause."). Accordingly, we reject Taylor's qualified immunity argument.

### III

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.


Entered for the Court


Carlos F. Lucero
Circuit Judge

16

11-4197 - *Plascencia v. Taylor*

**HARTZ**, Circuit Judge, concurring:

I concur fully in Judge Lucero's opinion, which properly analyzes this case under controlling Tenth Circuit precedent.  I write separately only to point out how the case could have been presented to the jury more simply, although the result would have been the same.

Taylor does not argue that he had probable cause to arrest Plascencia; and Plascencia does not argue, at least in his opening brief on appeal, that Taylor lacked reasonable suspicion.  Also, Plascencia does not argue that the length of his detention was unreasonable.  Given the absence of any dispute on those issues, all the jury had to determine regarding liability was:  (1) Did Taylor have reason to believe that handcuffs were necessary as a safety precaution (a requirement for the use of handcuffs when the officer has reasonable suspicion but not probable cause) and (2) Did Taylor use unreasonable force in applying the handcuffs and otherwise restraining Plascencia?  Instructions that set forth those two issues for the jury would have been much simpler than the ones that unnecessarily presented the issue of whether Plascencia was arrested or merely the subject of an investigative detention.

But even were we to hold that the jury should have been so instructed, the verdict would stand.  I see no reason to think that the damages awarded by the jury would have been any different under those instructions.  Given the way the case was presented, the damage award was obviously for what the jury found to be unnecessarily handcuffing

Plascencia and/or using excessive force in applying the handcuffs and otherwise restraining him.

2